IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JANET FOSTER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ALAN FOSTER, DECEASED, | ) ) ) ) ) | CASE NO.: 4:22-cv-002396-JD |
| Plaintiff, | ) ) | **MEMORANDUM ORDER AND** |
| vs. | ) ) | **OPINION** |
| KIA CORPORATION, KIA AMERICA, INC., LEAR CORPORATION, AND PV HOLDING CORP., | ) ) ) ) | |
| Defendants. | ) ) | |

This is a negligence suit, among other things, relating to the design, manufacture, and testing of a motor vehicle. Before the Court are two motions for summary judgment: one filed by Defendants Kia Corporation ("KC") and Kia America, Inc. ("KA") (collectively, the "Kia Defendants") (DE 74), and one filed by Defendant PV Holdings Corp. ("PV") (DE 75).[1] Plaintiff Janet Foster ("Ms. Foster"), in her individual and representative capacity, has responded in opposition to the Kia Defendants' motion (DE 82), and the Kia Defendants have replied (DE 84). For the reasons set forth below, the Kia Defendants' motion for summary judgment is granted (DE 74).

---

[1] PV also moved for summary judgment (DE 75). The parties have since filed a stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) formally dismissing PV from this action without prejudice. (*See* DE 90.) Accordingly, PV is no longer a party to this case, and its motion for summary judgment (DE 75) is denied as moot.

# I.   BACKGROUND

## A.     Factual Background

On June 3, 2021, Ms. Foster and her husband, Alan Foster, were travelling in a 2021 Kia Forte (the "Subject Vehicle") when the vehicle was struck from the rear by a 2016 Cadillac SRX in Brunswick County, North Carolina. (Kia Defs.' Ex. B, DE 74-2 at 1.) Mr. Foster was driving, and Ms. Foster occupied the front passenger seat. (Kia Defs.' Ex. D at 29, 35, DE 74-4 at 5, 7.) The Fosters had rented the subject vehicle a few days earlier, on May 31, 2021, from an Avis Budget Car Rental, LLC ("Avis Budget"), location in Myrtle Beach, South Carolina. (Kia Defs.' Ex. C at 1, DE 74-3 at 1.) At the time of the collision, the Subject Vehicle was stopped for a garbage truck when the Cadillac rear-ended it. (*Id.*) Mr. Foster sustained serious spinal injuries, including a fracture resulting in paraplegia, and later passed away from causes unrelated to the crash. (Kia Defs.' Ex. D at 20–21, DE 74-4 at 3–4.)

Defendant KC was responsible for the overall design and testing of the 2019–2023 Kia Forte model line, including the Subject Vehicle, while Defendant KA distributed those vehicles for sale in the United States. (Kia Defs.' Ex. E at 1, DE 74-5 at 1.) Avis Budget acquired the Subject Vehicle in February 2021, pursuant to a master agreement with KA, which provides that disputes arising under the agreement are governed by California law. (Kia Defs.' Ex. F at 5, DE 74-6 at 6.)

B. **Procedural Background**

On July 25, 2022, the Fosters initiated this action against KC, KA, and PV.[2] (Compl., DE 1.) Plaintiff Janet Foster, individually and as administratrix of the Estate of Alan Foster, is a citizen of Ohio. KC is incorporated and has its principal place of business in the Republic of Korea. KA is a California corporation with its principal place of business in Irvine, California, and is a wholly owned subsidiary of KC. PV is a Delaware corporation registered to do business in South Carolina. (Compl. ¶¶ 1–5, DE 1.) Because the action is between citizens of different states and a foreign corporation, and the amount in controversy exceeds $75,000, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2).

Several months later, on January 18, 2023, Ms. Foster filed an Amended Complaint,[3] in which she set forth the same jurisdictional allegations as well as the same operative causes of action against all Defendants:

- strict products-liability claims under South Carolina law ("Count I");

- breach-of-express-warranty claims ("Count II");

- breach-of-implied-warranty claims ("Count III");

- negligence claims ("Count IV"); and

- loss-of-consortium claims ("Count V").

---

[2]     In addition, the Fosters also named as a defendant Lear Corporation. (Compl. ¶ 4, DE 1 at 2.) Ms. Foster later voluntarily dismissed Lear Corporation. (DE 19.)

[3]     The Amended Complaint removes Mr. Foster as a plaintiff in the suit. (*See* Am. Compl., DE 34 at 1.)

(Am. Compl. ¶¶ 36–56, DE 34 at 9–13.) Ms. Foster asserts these claims under the South Carolina wrongful-death and survival statutes. (*Id.* ¶ 57.b–c, DE 34 at 13.) She also seeks punitive damages. (*Id.* ¶ 57.d., DE 34 at 13.)

On May 13, 2025, the Kia Defendants moved for summary judgment on all of Ms. Foster's claims. (DE 74.) The same day, PV moved for summary judgment. (DE 75.)

In the course of summary judgment briefing, the parties represented that they had reached an agreement resolving certain claims, leaving only Ms. Foster's failure-to-warn theory in dispute. (*See* DE 80; DE 82 n.1; DE 84 n.1.) However, because no amendment or dismissal of claims has been filed, all claims asserted in the Amended Complaint remain before the Court and are addressed below.[4]

## II.    STANDARD

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions,

---

[4]    The parties' filings (*see* DE 80; DE 82 n.1; DE 84 n.1) indicate their agreement to "resolve" all claims, except Ms. Foster's failure-to-warn claim against KC. The Court notes, however, that Federal Rule of Civil Procedure 41(a) governs dismissal of entire actions, not individual claims. *See Skinner v. First Am. Bank of Va.*, 64 F.3d 659, 1995 WL 507264, at *2 (4th Cir. 1995). Because the parties have not filed an amended pleading under Rule 15 or sought relief under Rule 21 to remove those claims, they technically remain pending. Accordingly, the Court addresses each cause of action asserted in the Amended Complaint to ensure a complete adjudication.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[] . . . ." *Id.* at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment

motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting another source). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 659–60.

## III.   DISCUSSION

The Kia Defendants move for summary judgment on all but one claim of the Amended Complaint. They argue that North Carolina law applies to Ms. Foster's tort claims and that, under that law, no genuine dispute of material fact exists. (DE 74.) In response, Ms. Foster filed an opposition addressing only her failure-to-warn theory under North Carolina law. (DE 82 at 1 n.1.) Kia Defendants' reply confirms that Ms. Foster has effectively abandoned her other theories. (DE 84 at 1 n. 1.) The Court,

therefore, begins by identifying the governing law before turning to each claim in sequence.

## A.     Choice-of-Law Principles[5]

This case arises under this Court's diversity jurisdiction. (Am. Compl. ¶¶ 1–7; DE 34 at 2.) Not only that, but the claims Ms. Foster presses are state-law claims—and she makes those claims under legal theories recognized in South Carolina. (*See, e.g., id.* ¶ 57, DE 34 at 9–12.)

In the federal courts, unless displaced by "matters governed by the Federal Constitution or by acts of Congress," state substantive law generally applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). And alongside, federal "procedural law" generally applies—meaning rules enacted under the Rules Enabling Act or that otherwise "discourage[] [ ] forum-shopping and avoid[] [ ] inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). This substantive-procedural distinction is sometimes referred to as "vertical choice of law."

Additionally, in some cases, the substantive-law inquiry includes questions of "horizontal choice of law"—namely, which of several possible states' substantive law applies to a dispute. This generally is resolved by reference to the choice-of-law rule applied by the state in which the federal court sits.[6] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Thus, for an action filed in South Carolina, South

---

[5]     The Court uses the terms "conflicts of law" and "choice of law" interchangeably.

[6]     While this often arises in diversity cases, that is not the basis for the choice-of-law analysis—"it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law." *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 541 n.1 (2d Cir. 1956).

Carolina law would be consulted for its choice of law rules," which directs South Carolina federal courts to the applicable substantive law. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 653 (4th Cir. 2010).

Sometimes, this is a straightforward exercise—when *no* possible body of substantive law "recognize[s] a cause of action of the kind alleged, there is no conflict of laws problem." *Lowe's N. Wilkesboro Hardware, Inc. v. Fid. Mut. Life Ins. Co.*, 319 F.2d 469, 472 (4th Cir. 1963). Similarly, when the choice-of-law issue "makes no discernable difference to the relevant analysis," courts need not wrestle with the issue. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 n.1 (4th Cir. 2025) (quoting another source). Finally, "choice of law issues may be waived," since they are non-jurisdictional. *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 779–80 (4th Cir. 2023).

## B.    Ms. Foster's Claims

### 1.    The Tort Claims in Counts I, IV, and V

#### (a)    *The Applicable Substantive Law*

Ms. Foster asserts products-liability claims sounding in negligence against the Kia Defendants. The Court begins with the predicate issue of what law applies to these claims. Since this case was brought in South Carolina, the Court turns to South Carolina choice-of-law principles—and the same provide that "the substantive law governing a tort action is determined by the *lex loci delicti*, the law of the state in which the injury occurred." *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001) (emphases added). Importantly, "*lex loci delicti* is determined by the state in which the injury occurred, *not* where the results of the injury were felt or where the damages

8

manifested themselves." *Rogers v. Lee*, 414 S.C. 225, 231, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015) (emphasis added).

These principles compel the conclusion that North Carolina substantive law governs the tort claims here. Ms. Foster's claims asserted in Counts I, IV, and V sound in tort. The Amended Complaint and other uncontroverted evidence show that the accident occurred in North Carolina, and the injuries sustained by the Fosters in that accident are the source of the tort claims. (*See* Am. Compl. ¶ 24, DE 34 at 7.) And so, the applicable substantive law for Ms. Foster's tort claims—the law of decision—is that of North Carolina.

### (b)  *The Summary Judgment Standard Applied to North Carolina Substantive Law*

#### (i)  **Count I: Strict Liability**

Ms. Foster alleges in Count I that the Kia Defendants are strictly liable under South Carolina's products-liability statute. (Am. Compl. ¶¶ 36–40, DE 34 at 9 (citing S.C. Code Ann. § 15-73-10).) But under *Klaxon Co.*, 313 U.S. at 496, the Court has determined that North Carolina law governs Ms. Foster's tort claims under South Carolina's choice-of-law rules.

Under North Carolina law, there is no common-law or statutory cause of action for strict products liability. *See* N.C. Gen. Stat. § 99B-1.1 (West, Westlaw through 2025 Reg. Sess.) ("There shall be no strict liability in tort in product liability actions."). The Kia Defendants raised this point in their motion for summary judgment. (DE 74 at 6.) Ms. Foster did not contest it, electing instead to argue that her failure-to-warn theory survives under North Carolina law. (*See* DE 82 at 5–7.)

A party's selective non-response to a dispositive legal argument waives that issue at the summary judgment stage. *See Wiener*, 58 F.4th at 779–82 (holding that choice-of-law arguments and substantive claims are subject to waiver). Ms. Foster's silence on this claim reflects a deliberate abandonment of her reliance on South Carolina law, and she offers no argument that strict liability exists under North Carolina law.

Accordingly, because North Carolina law does not recognize a cause of action for strict products liability and Ms. Foster has waived any contrary contention, the Kia Defendants are entitled to summary judgment on Count I, which is dismissed.

### (ii)    Count IV: Negligence

Count IV asserts multiple negligent product-liability theories under North Carolina law, including negligent design, negligent manufacture (or "formulation"), and failure to warn. (*See* Am. Compl. ¶ 51.a.–h., DE 34 at 11.) The Kia Defendants move for summary judgment on the negligent-manufacture theory in its entirety and further contend that the negligent-design claim cannot proceed against KA because its role was limited to distribution rather than design or testing of the Subject Vehicle. The Court addresses each argument in turn.

#### (A)    Negligent-Design and Negligent-Manufacturing Claims

North Carolina recognizes negligence claims premised on defective design and formulation where the defendant is a "manufacturer" of the product. *See* N.C. Gen. Stat. § 99B-6(a)–(b). KC concedes that it designed and tested the Forte model at issue. (Kia Defs.' Ex. E at 1, DE 74-5 at 2.) KA, by contrast, asserts that its role was limited

to distribution in the United States and that it "does not now, nor has it ever, designed, manufactured, developmentally tested, undertaken FMVSS compliance testing, or assembled any Kia brand vehicles." (*Id.*) North Carolina law imposes liability on "manufacturers" if

> the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:
>
>> (1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.
>>
>> (2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

N.C. Gen. Stat. Ann. § 99B-6(a) (West, Westlaw through 2025 Reg. Sess.). To proceed under this statute in negligence, a plaintiff must "prove (1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 326, 138 N.C. App. 70, 75 (N.C. Ct. App. 2000).

Here, the Kia Defendants have shown the absence of evidence supporting a negligent-manufacturing theory. It is undisputed that KC designed the Subject

Vehicle and KA distributed it for sale in the United States. [7] (Kia Defs.' Ex. E at 1, DE 74–5 at 2). Ms. Foster's expert, Steven Meyer, P.E., criticizes the design strength of the driver's seat, but identifies no evidence of a manufacturing variance specific to the Subject Vehicle. (*See* Kia Defs.' Ex. G at 41–42, DE 74-7 at 42–43.) Ms. Foster points to no other facts showing that KC *or* KA negligently assembled or formulated the seat. A plaintiff's "failure to respond to the [summary judgment] motion" means that this Court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

On this record, no reasonable jury could find liability under section 99B-6 based on manufacturing defects. Summary judgment is, therefore, warranted on negligent-manufacturing theories as to both Defendants.

---

[7]     The Kia Defendants also contend that KA is not a "manufacturer" under North Carolina law (DE 74 at 7–8) and, therefore, it bears no liability under Ms. Foster's negligent-design or negligent-manufacture theories. The statute defines "manufacturer" to include any entity that "designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale," as well as "a seller owned in whole or significant part by the manufacturer." N.C. Gen. Stat. § 99B-1(2) (West, Westlaw through 2025 Reg. Sess.). KC acknowledges that it was responsible for the overall design and testing of the subject model line. (Kia Defs.' Ex. E at 1, DE 74-5 at 2.) KA identifies itself as a seller (DE 74 at 7 n.3), and its interrogatory responses confirm that it is a wholly owned subsidiary of KC. (DE 9 at 2.) On this record, KA appears to fall within the statutory definition of "manufacturer" as a matter of law. Accordingly, the Court addresses the negligent-design and negligent-manufacture claims on their evidentiary merits as presented in the parties' briefing.

To be clear, the Court's conclusion on the statutory definition of "manufacturer" addresses only KA's threshold eligibility for potential liability under section 99B-6 and does not resolve whether KA owed or breached any duty under Ms. Foster's negligent-design theory.

As to the negligent-design theory against KA, the Kia Defendants' motion does not satisfy their initial burden under Rule 56. *See Celotex Corp*, 477 U.S. at 323. Their sole basis for summary judgment on this claim is the contention that KA is not a "manufacturer" within the meaning of section 99B-1(2). (DE 74 at 7–8.) As explained in footnote 7 *supra*, however, the statutory definition expressly includes a "seller owned in whole or significant part by the manufacturer," and KA's interrogatory responses confirm that it is wholly owned by KC. (DE 9 at 2.) The argument that KA is categorically outside of section 99B-6, therefore, fails as a matter of law.

Critically, the Kia Defendants do not identify any element of section 99B-6 on which Ms. Foster lacks evidence, nor do they point to an absence of design-defect proof as required to discharge their burden under *Celotex Corp.*, 477 U.S. at 325. The Court has also considered the "Statement of Undisputed Facts" in the Kia Defendants' motion (DE 74 at 2–4). Even if taken as true, those background facts do not identify any element of Ms. Foster's negligent-design theory on which Ms. Foster lacks evidence, nor do they establish that Ms. Foster's design-defect evidence is insufficient as a matter of law. Accordingly, those asserted facts do not alter the Court's conclusion that the Kia Defendants have not met their threshold burden under Rule 56.

Because the motion advances no evidentiary basis demonstrating the absence of a genuine dispute of material fact as to the negligent-design claim against KA, the burden does not shift to Ms. Foster. *Celotex Corp.*, 477 U.S. at 323–24. On this record,

13

the Court cannot conclude that "the evidence could not permit a reasonable jury to return a favorable verdict" for Ms. Foster. *Sedar*, 988 F.3d at 761.

Accordingly, the Kia Defendants' request for summary judgment on Ms. Foster's negligent-design theory against KA is denied.[8]

(B)     Failure-to-Warn Claims

Ms. Foster maintains that the Kia Defendants negligently failed to warn of a risk of spinal injury associated with rear-impact collisions involving the Subject Vehicle's front seat. (DE 82 at 5–9.) The Kia Defendants deny that any such duty or breach existed and contend that Ms. Foster has failed to produce evidence satisfying the elements of a failure-to-warn claim. (DE 74 at 10–13; DE 84 at 2–4.)

Under section 99B-5(a) of the North Carolina General Statutes, a manufacturer is liable for failure to provide an adequate warning only if the plaintiff establishes that:

- the manufacturer knew or should have known the product posed a danger likely to cause harm;

- the manufacturer failed to provide an adequate warning or instruction concerning that danger; and

- the failure to warn was a proximate cause of the plaintiff's injury.

*See Red Hill Hosiery Mill, Inc.*, 530 S.E.2d at 326–27, 138 N.C. App. at 75. Each element must be supported by competent evidence to withstand summary judgment. *Cf. DeWitt v. Eveready Battery Co.*, 550 S.E.2d 511, 516–17, 144 N.C. App. 143, 151 (N.C. Ct. App. 2001), *aff'd*, 565 S.E.2d 140, 355 N.C. 672 (2002).

---

[8]     For this reason, the Kia Defendants' two-sentence argument for summary-judgment on Ms. Foster's loss-of-consortium claim must be rejected. (*See* DE 74 at 8.)

14

(1)     *Knowledge or Foreseeability of Danger*

North Carolina law imposes "special proof requirements" under section 99B-5, requiring proof that the manufacturer knew or should have known of "a substantial risk of harm" and that the alleged failure to warn proximately caused the injury. *Evans*, 569 S.E.2d at 306, 153 N.C. App. at 59 (quoting N.C. Gen. Stat. § 99B-5(a)) (affirming directed verdict where the plaintiff failed to show that an omitted warning would have prevented the injury). KC's interrogatory responses confirm that it was responsible for the overall design and testing of the 2019–2023 Kia Forte model line, while KA handled distribution within the United States. (Kia Defs.' Ex. E at 1–2, DE 74-5 at 2–3; DE 74 at 3.) The record, however, contains no evidence that the Kia Defendants were aware—through internal testing, consumer complaints, or other data—of any defect or hazard in the Subject Vehicle's seat-back design that created a risk of spinal injury in rear-impact collisions.

Ms. Foster, for her part, has identified no internal documents, prior incidents, or expert analyses showing that the Kia Defendants knew or reasonably should have known of such a danger. Her assertions (below) are unsupported, namely, that the Kia Defendants:

- knew the seats were dangerous, particularly for anyone over 172 pounds;

- knew that they had not tested its seats for the average American male; and

- knew the seats were failing in rear impact crashes and that the results were catastrophic.

(DE 82 at 4.) Under *Celotex Corp.*, once the Kia Defendants establish the absence of evidence supporting an essential element of Ms. Foster's claim, the burden shifted to

Ms. Foster to designate specific facts showing a genuine issue for trial. She has not done so.

The Court has nevertheless considered Ms. Foster's Exhibit E (DE 82-5), a table compiled by Ms. Foster's expert, Steven Meyer, P.E., summarizing various rear-impact accidents involving assorted Kia and Hyundai vehicles. Ms. Foster contends this chart shows that "Kia knew its inadequate testing resulted in seat failures during rear impact crashes before it ever built the Kia Forte." (DE 82 at 4.) Even accepting this exhibit for summary-judgment purposes, it does not establish that the Kia Defendants had notice of any defect in the Subject Vehicle or any substantially similar seat design. The chart is unsworn and lacks foundation or authentication. Nor does it indicate that the incidents involved comparable seat structures, testing standards, or failure modes. *Cf. Nicholson v. Am. Safety Util. Corp.*, 476 S.E.2d 672, 677, 124 N.C. App. 59, 67 (N.C. Ct. App. 1996) (describing adequate substantive evidence of testing), *aff'd as modified*, 346 N.C. 767, 488 S.E.2d 240 (1997). Without more evidence of related accidents, it is insufficient to show that a manufacturer "knew or should have known" that its product was unreasonably dangerous. *Red Hill Hosiery Mill*, 530 S.E.2d at 326. Exhibit E therefore does not create a genuine issue of material fact as to Kia Defendants' knowledge under section 99B-5(a)(1) of the North Carolina General Statutes.

(2)     *Adequacy of Warning*

Ms. Foster does not identify any warning, instruction, or label on the Subject Vehicle that was allegedly inadequate, nor does she propose what additional warning

16

should have been given. A manufacturer has a duty to provide adequate warnings "reasonably commensurate with the dangers" of its product. *Smith v. Selco Prods., Inc.*, 385 S.E.2d 173, 176, 96 N.C. App. 151, 157 (N.C. Ct. App. 1989). But conclusory allegations that a warning was inadequate, unsupported by evidence showing how or why it was deficient, are insufficient to withstand summary judgment.

Even crediting Ms. Foster's evidence regarding seat-back strength and testing protocols, these assertions address the adequacy of the seat's *design*, not the adequacy of any warning. Under section 99B-5, liability arises only when a warning could have rendered an otherwise safe product non-hazardous in normal use. Where, as here, the alleged defect is inherent in the design itself, no warning could have cured the danger, and a warnings theory is legally unavailable. On this record, there is no evidence that the Kia Defendants breached a duty to warn.

(3)     <em>Causation</em>

Even assuming a duty and breach, Ms. Foster has not produced evidence that any failure to warn proximately caused Mr. Foster's injury. Ms. Foster concedes that she and her husband did not select the Subject Vehicle and were unaware of any warnings or manufacturer representations. (*See* Kia Defs.' Ex. D at 27, DE 74-4 at 7.) She admits they "didn't choose the car" but merely accepted a mid-size rental assigned by Avis Budget. (*Id.*)

This is unlike cases where warnings may have been given and thus created a fact question. *See, e.g.*, *Bryant v. Adams*, 448 S.E.2d 832, 842, 116 N.C. App. 448, 467 (N.C. Ct. App. 1994) (pre-section 99B-5 case considering, among other disputed facts,

whether a "faded" warning label was sufficient). If the injured party neither saw nor relied on a manufacturer's warning, then "substantial evidence the alleged inadequate warning proximately caused Plaintiff's injuries," *DeWitt*, 550 S.E.2d at 520 n.6, 144 N.C. App. at 156, is missing. Ms. Foster's suggestion that an *additional* warning could have changed his behavior is speculative and cannot create a triable issue of causation. *See Liberty Lobby, Inc.*, 477 U.S. at 252. To establish proximate cause under North Carolina law, a plaintiff must present evidence that an inadequate warning affected the plaintiff's conduct or otherwise contributed to the injury. Ms. Foster has offered no such evidence.

*       *       *

The evidentiary record contains no competent proof that the Kia Defendants knew or should have known of a latent danger, failed to provide an adequate warning, or that any such failure proximately caused the injury alleged. Viewing the evidence in the light most favorable to Ms. Foster, no reasonable jury could find that the Kia Defendants are liable under section 99B-5.

Having met its initial Rule 56 burden through the absence of prior incidents, the Kia Defendants shifted the burden to Ms. Foster to produce specific, admissible facts establishing a triable issue on each statutory element. *Celotex Corp.*, 477 U.S. at 322–23. Ms. Foster's conclusory assertions and her expert's design opinions do not satisfy that obligation. Accordingly, the Kia Defendants are entitled to summary judgment on Ms. Foster's failure-to-warn claim under Count IV.

18

###### 2.    The Contract Claims in Counts II and III

###### (a)    *The Applicable Substantive Law*

Ms. Foster also asserts product-liability claims sounding in contract against the Kia Defendants. As with her tort claims, the first question is which state's law applies. Relevant here, South Carolina has adopted a choice-of-law provision borrowed from the Uniform Commercial Code ("UCC").[9] *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 206 (4th Cir. 1988). The relevant statutory text provides:

> Except as otherwise provided in this section, when a transaction bears a reasonable relation to this State and also to another state or nation, the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties.

S.C. Code Ann. § 36-1-301(a) (West, Westlaw through 2025 Act No. 94).

The Kia Defendants point to the contract for the sale of the Subject Vehicle for its choice-of-law clause to assert that California law applies to these claims. (Kia Defs.' Ex. F at 6, DE 74-6 at 6 (explaining that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California").) Ms. Foster does not address these arguments in her response. (*See* DE 82 at 1 n.1.) The Court proceeds therefore, to analyze her claims under California substantive law.

---

[9]    Because Ms. Foster's claim turns on a transaction involving a "good"—here, the subject vehicle—South Carolina's UCC choice-of-law provision applies. *See* S.C. Code Ann. § 36-2-102 (West, Westlaw through 2025 Act No. 94) (explaining that "this Chapter applies to transactions in goods"); *id.* § 36-1-102 (explaining Chapter 1 "applies to a transaction to the extent that it is governed by another chapter of" the UCC).

### (b) *The Summary Judgment Standard Applied to California Substantive Law*

#### (i) Count II: Express Warranty Claims

Under California sales law, "to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*, 227 Cal. Rptr. 3d 862, 877, 19 Cal. App. 5th 258, 275 (Cal. Ct. App. 2018) (cleaned up) (quoting another source).

In her Amended Complaint, Ms. Foster contends only that "through advertising" the Kia Defendants made the actionable representations. (Am. Compl. ¶ 42, DE 34 at 9.) But in their motion for summary judgment, the Kia Defendants contend that "alleged advertising played no role whatsoever in this case." (DE 74 at 9.) They point to Ms. Foster's testimony that she "didn't choose the car" and that she did not believe that she "had any experience with Kia vehicles before that time[.]" (*Id.* (quoting Kia Defs.' Ex. D, 27:3–12).)

This uncontroverted testimony eliminates any triable issue on the first element of an express warranty claim under the applicable law. *See Keith v. Buchanan*, 220 Cal. Rptr. 392, 396, 173 Cal. App. 3d 13, 22 (Cal. Ct. App. 1985) (explaining that the first element is satisfied by "statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public in order to induce sales can create express warranties"). As was her burden, Ms. Foster failed to show she either selected the vehicle based on the Kia Defendants'

20

advertising or relied on any representation made by the manufacturer or distributor. *Cf. Custer*, 12 F.3d at 416 (granting summary judgment where nonmovant "failed to respond" with specific facts supporting claim).

Therefore, the Kia Defendants' motion for summary judgment is granted as to Count II.

### (ii)     Count III: Implied Warranty Claims

In California, implied warranties of merchantability and fitness for a particular purpose require vertical privity between the plaintiff and the defendant.[10] *Davis v. Nissan N. Am., Inc.*, 319 Cal. Rptr. 3d 517, 530, 100 Cal. App. 5th 825, 839 (Cal. Ct. App. 2024) (privity is a prerequisite to implied warranty liability); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 23, 169 Cal. App. 4th 116, 138 (Cal. Ct. App. 2008) (vertical privity "means that the buyer and seller were parties to the sales contract"). California courts have recognized a limited direct-dealings exception where the facts show a contractual interaction between the manufacturer and the purchaser that forms the basis of the consumer's sale. As the court in *Cardinal Health* explains, the "direct dealings" exception applies only where the manufacturer's conduct effectively places it in the position of the seller. *Id.* at 28, 169 Cal. App. 4th at 144. California Courts have consistently declined to expand that

---

[10]     While other more lenient provisions of California law may have applied to her claims, Ms. Foster did not plead them. *See, e.g.*, *Davis v. Nissan N. Am., Inc.*, 100 Cal. App. 5th 825, 842, 319 Cal. Rptr. 3d 517, 531 (2024) (explaining effect of other California statutes that "supplement[] rather than supersede[] the UCC" and that avoid privity requirements present in the latter).

exception beyond these narrow circumstances. *See id.* at 22–26, 169 Cal. App. 4th at 138–40.

Here, the undisputed evidence shows that Ms. Foster did not buy the Subject Vehicle; rather, any implied warranty obligations arising from its sale extended solely to Avis Budget under a supply agreement with KA. (*See* Kia Defs.' Ex. F at 1, DE 74-6 at 2.) Ms. Foster identifies no direct contractual relationship with either KC or KA and no facts suggesting that either of them engaged in direct dealings with Ms. Foster in connection with the Subject Vehicle's acquisition. *Blanco v. Baxter Healthcare Corp.*, 70 Cal. Rptr. 3d 566, 582, 158 Cal. App. 4th 1039, 1059 (Cal. Ct. App. 2008) (explaining rule that "there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale" (quoting another source)). As a result, Ms. Foster cannot satisfy the privity requirement or invoke the direct-dealings exception.

Independently, the Kia Defendants have pointed to an absence of evidence supporting the essential elements of any implied-warranty claim, and Ms. Foster has not produced facts establishing suitability for any purpose or any reliance on the Kia Defendants' skill or judgment. A complete failure of proof on an element for which Ms. Foster bears the burden at trial warrants summary judgment. *See Celotex Corp.*, 477 U.S. at 322–25.

Accordingly, Defendants' motion for summary judgment is granted as to Count III.

## IV.    CONCLUSION

For these reasons, Defendants Kia Corporation and Kia America, Inc.'s Motion for Summary Judgment (DE 74) is **GRANTED IN PART and DENIED IN PART** as follows:

(1)    As to claims asserted by Plaintiff Janet Foster against Kia America, Inc.:

    a.    Summary judgment is **GRANTED** on Count I (strict products liability), Count II (express warranty), Count III (implied warranty), and is **GRANTED IN PART** as to the Count IV negligent-manufacturing and negligent failure-to-warn theories.

    b.    Summary judgment is **DENIED** as to the Count IV negligent-design theory and on Count V (loss of consortium), both of which remain for trial against KA.

(2)    As to claims asserted by Plaintiff Janet Foster against Kia Corporation:

    a.    Summary judgment is **GRANTED** on Count I (strict products liability), Count II (express warranty), Count III (implied warranty), and is **GRANTED IN PART** as to the Count IV negligent-manufacturing and negligent failure-to-warn theories.

    b.    Summary judgment is **DENIED** as to the Count IV negligent-design theory and on Count V (loss of consortium), both of which remain for trial against KC.

In light of the parties' Stipulation of Dismissal of PV Holding Corp. (DE 90),
Defendant PV Holding Corp.'s previously filed Motion for Summary Judgment (DE
75) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 12, 2025