IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JANET FOSTER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ALAN FOSTER, DECEASED, | ) ) ) ) ) | CASE NO.: 4:22-cv-002396-JD |
| Plaintiff, | ) ) | **MEMORANDUM ORDER AND OPINION ON THE PARTIES'** |
| vs. | ) ) | **MOTIONS IN LIMINE** |
| KIA CORPORATION AND KIA AMERICA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

This negligent-design products-liability action is before the Court on the parties' motions in limine. Plaintiff Janet Foster, individually and as Administratrix of the Estate of Alan Foster, deceased ("Plaintiff" or "Foster"), filed an Omnibus Motion in Limine seeking advance rulings on several categories of evidence and argument anticipated at trial. (DE 102.) Defendants Kia Corporation and Kia America, Inc. (collectively, "Kia" or the "Kia Defendants"), filed a response in opposition to certain requested exclusions. (DE 105.) Plaintiff has filed a reply. (DE 106.) Kia likewise filed an Omnibus Motion in Limine seeking to exclude or limit various categories of evidence, testimony, and argument. (DE 103.) Plaintiff filed a response in opposition, and Kia filed a reply. (DE 104; DE 107.)

After reviewing the parties' submissions, the record, the governing law, and the Court's prior rulings, the Court grants the motions in part, denies them in part, and reserves ruling in part for the reasons stated below.

## I.    BACKGROUND

### A.    Factual Background[1]

This products-liability action arises from a June 3, 2021, automobile accident in Brunswick County, North Carolina. Plaintiff Janet Foster and her now-deceased husband, Alan Foster, were traveling in a rented 2021 Kia Forte (the "Subject Vehicle"). Mr. Foster was driving, and Mrs. Foster occupied the front passenger seat. The Fosters had rented the Subject Vehicle from an Avis Budget Car Rental, LLC, location in Myrtle Beach, South Carolina, several days before the accident. (DE 92.)

At the time of the accident, the Subject Vehicle was stopped behind a garbage truck when it was struck from the rear by another vehicle. The impact pushed the Subject Vehicle forward, caused it to rotate, and resulted in a subsequent collision with a utility pole. (DE 92; DE 103.) Mr. Foster sustained serious spinal injuries, including a fracture that resulted in paraplegia. He later passed away from causes unrelated to the accident. (DE 92.)

Plaintiff contends the Kia Defendants are liable because the Subject Vehicle's driver's seat and seatback were negligently designed and allegedly collapsed rearward during the crash, causing or contributing to Mr. Foster's spinal injuries.

---

[1]    The facts summarized in this section are provided only to place the motions in limine in context. They are drawn from the pleadings, the parties' submissions, and the Court's prior summary-judgment order, and they are not findings of fact for trial.

(DE 34.) Plaintiff brings the negligent-design claim as Administratrix of Mr. Foster's estate and also asserts a loss-of-consortium claim arising from the accident. (*Id*.) The Kia Defendants deny liability and contend, among other things, that the seat and seatback design was reasonable, complied with applicable governmental standards, and did not cause Mr. Foster's injuries. (DE 37; DE 38.)

The pending motions in limine concern several categories of evidence and argument relevant to those disputed issues and to the management of trial. Plaintiff seeks to limit or exclude, among other matters, evidence concerning regulatory compliance, federal safety standards, National Highway Traffic Safety Administration ("NHTSA") action or inaction, broad statistical crash data, certain defense themes, and Mr. Foster's unrelated medical history. (DE 102; DE 106.) The Kia Defendants seek to limit or exclude, among other matters, evidence and argument concerning other incidents, other lawsuits, media coverage, counsel and experts in other cases, consumer-safety themes, corporate representatives, discovery disputes, expert compensation, NHTSA communications, and assertions that Kia knew the Subject Vehicle's seat was defective. (DE 103; DE 107.) The parties have responded to the respective motions, and certain requests have been withdrawn, narrowed, or rendered moot by stipulation. (DE 104; DE 105; DE 106; DE 107.)

## B.     Procedural Background

Plaintiff Janet Foster and Alan Foster filed this action on July 25, 2022, against Kia America, Inc., Kia Corporation, Lear Corporation, and PV Holding Corporation. (DE 1.) Lear Corporation was voluntarily dismissed on September 22,

2022. (DE 19.) After Mr. Foster passed away from causes unrelated to the accident, Plaintiff filed an amended complaint in her individual capacity and as Administratrix of Mr. Foster's estate. (DE 34.) The amended complaint asserted claims arising from the alleged design of the Subject Vehicle's seat and seatback, including claims brought on behalf of Mr. Foster's estate and Plaintiff's individual loss-of-consortium claim. (*Id.*)

Following discovery, Kia America, Inc., Kia Corporation, and PV Holding Corporation moved for summary judgment. (DE 74; DE 75.) Plaintiff responded, and the moving defendants replied. (DE 82; DE 84.) Before the Court ruled on summary judgment, PV Holding Corporation was dismissed without prejudice and ceased to be a party to this action. (DE 90; DE 92.) The Court thereafter entered its summary-judgment order. (DE 92.) As relevant here, the Court granted summary judgment on Plaintiff's manufacturing-defect and warning-based theories and denied summary judgment on Plaintiff's negligent-design theory. (*Id.*) The remaining claims for trial are Plaintiff's negligent-design claim against the Kia Defendants and Plaintiff's derivative loss-of-consortium claim. (*Id.*)

The Court also determined in its summary-judgment order that North Carolina substantive law governs the remaining tort claims. (DE 92 at 8–9.) Because this Court sits in diversity, South Carolina choice-of-law rules apply. Under South Carolina law, tort claims are governed by the substantive law of the state where the injury occurred. (*Id.*) The accident occurred in North Carolina, and the Court therefore applies North Carolina substantive law to the remaining claims. (*Id.*) Those

rulings remain part of the governing trial framework and inform the Court's analysis of several evidentiary issues raised in the present motions.[2]

Plaintiff filed her omnibus motion in limine seeking advance rulings on eighteen categories of evidence and argument. (DE 102.) The Kia Defendants filed a response, and Plaintiff filed a reply. (DE 105; DE 106.) In her reply, Plaintiff withdrew or abandoned three requests: MIL No. 13 concerning references to apology or remorse; MIL No. 14 concerning argument that all seats designed to the same parameters are defective; and MIL No. 18 concerning Mr. Foster's alleged degenerative spinal condition. (DE 106.) Accordingly, the Court does not separately address those withdrawn requests.

The Kia Defendants filed their omnibus motion in limine seeking advance rulings on thirteen categories of evidence and argument. (DE 103.) Plaintiff filed a response, and the Kia Defendants filed a reply. (DE 104; DE 107.) In their reply, the Kia Defendants withdrew MIL No. 11, which sought to exclude repetitive evidence and witness testimony. (DE 107.) Accordingly, the Court does not separately address that withdrawn request.

After briefing on Kia's motions in limine, Plaintiff filed a supplemental memorandum addressing the admissibility of other similar incidents. (DE 120.) The Court construes that filing as a supplemental submission and proffer directed to Kia's

---

[2]    The Federal Rules of Evidence govern the admissibility of evidence at trial. North Carolina substantive law informs the elements of the remaining claims and defenses, including the relevance of evidence bearing on design defect, reasonableness of design, causation, damages, and any statutory product-liability factors applicable to the remaining negligent-design theory.

MIL No. 12, and related issues raised in Kia's MIL Nos. 1 and 13. To the extent DE 120 seeks an affirmative ruling admitting other-incident evidence, the Court treats that request as part of the pending evidentiary issues addressed below, not as a separate motion.

The motions are fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

"Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006). "The purpose of a motion in limine is to allow a court to rule on *evidentiary* issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13-cr-222-JCC, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014) (emphasis added). When ruling on a motion in limine, a federal district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n. 2 (4th Cir. 1984)).

However, a motion in limine "should be granted only when the evidence is clearly inadmissible *on all potential grounds." Verges*, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *3; *see also Fulton v. Nisbet*, C/A No. 2:15-4355-RMG, 2018 U.S. Dist. LEXIS 13342, 2018 WL 565265, at *1 (D.S.C. Jan. 25, 2018) (emphasis added). Courts routinely deny motions in limine that seek to exclude broad categories of evidence or that lack specificity. *United States ex rel. Lutz v. BlueWave Healthcare Consultants, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 11621327, at *1 (D.S.C. Nov. 16,

2017). In addition, broad pretrial evidentiary rulings may "seriously prejudice[] [a party's] ability to present its case," and courts are often wise to await the unfolding of evidence. *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 F. App'x 710, 715 (4th Cir. 2014) (per curiam).

## III.    DISCUSSION

With the governing standards in mind, and for ease of reference at trial, the Court addresses the parties' motions by party and motion number. Several motions seek categorical pretrial rulings on broad classes of evidence, while others concern issues more properly addressed through trial management, limiting instructions, or objections made in context. Because broad pretrial evidentiary rulings may "seriously prejudice[] [a party's] ability to present its case," courts are often "wise to await the unfolding of evidence before the jury" before making definitive rulings on disputed evidence. *E.I. DuPont de Nemours & Co.*, 564 F. App'x at 715. Accordingly, where admissibility depends on the purpose for which evidence is offered, the foundation established, the manner in which the evidence is presented, or Rule 403 balancing, the Court reserves ruling or denies the motion without prejudice.

Unless otherwise stated, any matter as to which the Court reserves ruling, or grants leave to raise the issue later, shall be raised outside the jury's presence before counsel refers to the evidence in opening statement, elicits testimony, publishes an exhibit, or makes argument concerning the matter. The proponent shall identify the specific evidence, the purpose for which it is offered, the foundation supporting

7

admissibility, any hearsay or non-hearsay basis, and any requested limiting instruction.

## A.     Plaintiff's Motions in Limine

### 1.     Plaintiff's Withdrawn Motions in Limine Nos. 13, 14, and 18

Plaintiff's Omnibus Motion in Limine originally sought advance rulings on eighteen categories of evidence and argument. (DE 102.) In her reply, Plaintiff withdrew or abandoned MIL No. 13 concerning references to apology or remorse, MIL No. 14 concerning argument that all seats designed to the same parameters are defective, and MIL No. 18 concerning Mr. Foster's alleged degenerative spinal condition. (DE 106.)

Accordingly, Plaintiff's MIL Nos. 13, 14, and 18 are **DENIED AS MOOT**, and the Court does not address them further.

### 2.     Plaintiff's Unopposed or Stipulated Motions in Limine Nos. 1, 2, 6, 7, 15, and 16

Plaintiff seeks to exclude six categories of evidence, argument, or reference: collateral sources, insurance, taxes, and annuities; Federal Motor Vehicle Safety Standards ("FMVSS") compliance as a complete defense; "too many lawsuits," "litigation crisis," and similar tort-reform themes; argument concerning the alleged economic impact of a verdict on vehicle prices; apportionment of fault; and references to the filing, presentation, or ruling on the motions in limine. (DE 102.) Kia either does not oppose these requests, agrees to the requested limitations, or contends that the issues are moot because the applicable limitations are already established. (DE 105.)

The Court finds these requests appropriate for trial-management purposes. The subjects identified in Plaintiff's MIL Nos. 1, 2, 6, 7, 15, and 16 are either irrelevant to the issues the jury must decide, governed by specific evidentiary rules, or present a substantial risk of unfair prejudice, confusion, or improper argument if raised before the jury without a proper foundation or permissible purpose. *See* Fed. R. Evid. 401, 402, 403. As to collateral-source and insurance-related matters specifically, the Supreme Court has recognized that collateral-benefit evidence is readily subject to jury misuse and may be excluded where its prejudicial effect outweighs any probative value. *See Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 254–55 (1963).

Accordingly, Plaintiff's MIL Nos. 1, 2, 6, 7, 15, and 16 are **GRANTED**, subject to the limitations stated below regarding FMVSS compliance. Counsel shall not refer to the excluded matters in opening statement, witness examination, closing argument, or otherwise in the presence of the jury unless counsel first raises the matter outside the jury's presence and obtains leave of Court.

As to Plaintiff's MIL No. 2 specifically, this ruling excludes only the use of FMVSS compliance as a complete defense or as dispositive proof of safety. It does not preclude Kia from offering otherwise admissible evidence of FMVSS compliance for the limited purpose of showing design reasonableness under N.C. Gen. Stat. § 99B-6(b)(3), which permits consideration of "[t]he extent to which the design or formulation conformed to any applicable government standard that was in effect when the product left the control of its manufacturer." FMVSS compliance may be

argued as probative, but not dispositive, evidence of reasonableness. Kia may not argue that FMVSS compliance is a complete defense, that compliance conclusively establishes the design was safe, or that NHTSA or the federal government approved or deemed the design safe.

### 3.    Plaintiff's Motions in Limine Nos. 3 and 5 — NHTSA Approval, FMVSS Compliance, and Government Standards

Plaintiff's MIL No. 3 seeks to exclude evidence, testimony, or argument suggesting that NHTSA "approved" the Kia Forte, deemed it "safe," or found that the design at issue was not defective. (DE 102 at 4–5.) Plaintiff's MIL No. 5 seeks to exclude evidence or argument concerning compliance with FMVSS provisions unrelated to the seat system at issue. (*Id.* at 7.) The motions overlap because both concern regulatory evidence and the risk that the jury will draw an improper inference that federal regulatory compliance, or the absence of federal regulatory action, establishes that the design was safe or non-defective.

Kia represents that it will not offer evidence or argument stating or suggesting that FMVSS compliance, the absence of NHTSA action, or the absence of a recall or investigation constitutes governmental approval of the design or means that the federal government deemed the design safe. (DE 105 at 2–3.) Kia maintains, however, that it should be permitted to offer evidence that the subject seat design has not been the subject of a recall or governmental investigation. (*Id.*) Kia also argues that compliance with FMVSS standards is circumstantial evidence bearing on whether Kia acted reasonably in designing the vehicle and whether the design proximately caused Mr. Foster's injuries. (*Id.* at 4.)

The Court agrees with Plaintiff that Kia may not argue or imply that NHTSA approved the Subject Vehicle or the subject seat design as safe, that the absence of a recall or investigation establishes the absence of a defect, or that FMVSS compliance operates as a complete defense. Such arguments would overstate the legal significance of regulatory compliance or regulatory inaction and would risk misleading the jury. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 628–29 (M.D.N.C. 2006) (explaining, in the context of NHTSA's decision not to pursue a recall for certain vehicles, that the decision did not equate to a finding by NHTSA that no defect existed).

At the same time, the remaining claim is a negligent-design claim governed by North Carolina substantive law. North Carolina law permits the factfinder, in determining whether a manufacturer acted unreasonably in designing a product, to consider "[t]he extent to which the design or formulation conformed to any applicable government standard that was in effect when the product left the control of its manufacturer." N.C. Gen. Stat. § 99B-6(b)(3). Accordingly, evidence of compliance with applicable FMVSS standards may be *probative* of design reasonableness. But the statutory reference to "applicable" government standards matters. Kia may not use FMVSS standards unrelated to the seat or seatback design as generalized proof that the vehicle was safe overall, nor may it use general regulatory compliance to substitute for evidence concerning the design actually at issue in this case.

Whether particular FMVSS standards, NHTSA materials, or evidence concerning the absence of recall or investigation are admissible will depend on the

11

specific evidence offered, the relationship between that evidence and the subject seat or seatback design, the purpose for which the evidence is offered, and the Rule 403 balance. Because that inquiry is context-dependent, a categorical pretrial exclusion would be too broad. *See E.I. DuPont de Nemours & Co.*, 564 F. App'x at 715 (explaining that courts are often "wise to await the unfolding of evidence before the jury" before making definitive rulings on disputed evidence).

Accordingly, Plaintiff's MIL Nos. 3 and 5 are **GRANTED IN PART and RESERVED IN PART**. Kia may not argue or imply that NHTSA or the federal government approved the Subject Vehicle or deemed the subject seat design safe, that the absence of a recall or investigation proves there was no defect, or that FMVSS compliance is a complete defense or dispositive proof of safety. The Court reserves ruling on whether particular FMVSS standards, NHTSA materials, or evidence concerning the absence of recall or investigation may be admitted for a limited and proper purpose under North Carolina law. Before presenting such evidence, Kia shall raise the matter outside the jury's presence and identify the specific evidence, the design issue to which it relates, the purpose for which it is offered, and any proposed limiting instruction.

### 4. Plaintiff's Motions in Limine Nos. 4 and 8 — Overall Safety Evidence, Ratings, Awards, and Statistical Data

Plaintiff's MIL No. 4 seeks to exclude evidence, testimony, or argument suggesting that the Kia Forte is generally safe, has an excellent overall safety record, or received favorable overall safety ratings or awards. (DE 102 at 5–6.) Plaintiff's MIL No. 8 seeks to exclude broad statistical evidence suggesting that death or injury rates

in crashes involving the Kia Forte are low, that the Forte compares favorably to other vehicles, or that no other Forte has similarly failed. (*Id*. at 9.) These motions overlap because both concern generalized safety evidence and the risk that Kia will ask the jury to infer that the seat and seatback were reasonably designed from broad evidence about the vehicle as a whole.

Kia responds that the Forte's safety ratings and overall safety record are circumstantial evidence that Kia acted reasonably in designing and formulating the Subject Vehicle. Kia further argues that statistical evidence concerning the rarity of death or serious injury in crashes involving substantially similar Kia Fortes is probative of North Carolina's statutory risk-utility factors, including the nature and magnitude of the risks associated with the design and the utility, performance, safety, and advantages associated with the design. (DE 105 at 3–6.) Plaintiff replies that the design alleged to be defective is the seat and seatback, not the vehicle as a whole, and that unrelated ratings, awards, or aggregate crash statistics do not become relevant merely because they concern the same vehicle model. (DE 106 at 4–10.)

The Court agrees with Plaintiff that generalized evidence of the Kia Forte's overall safety, favorable ratings, awards, or aggregate crash performance has limited probative value if not connected to the particular component, failure mode, crash dynamics, or design choices at issue. The remaining negligent-design claim concerns the Subject Vehicle's driver's seat and seatback. Evidence that the Forte performs well overall, or that it received favorable ratings for other crash modes or vehicle

13

systems, risks confusing the jury by shifting attention from the design actually challenged to the overall performance of the vehicle.

At the same time, the Court cannot conclude at this stage that all safety-rating, comparative, or statistical evidence is clearly inadmissible on all potential grounds. North Carolina's design-defect statute permits consideration of, among other things, "[t]he nature and magnitude of the risks of harm associated with the design or formulation" and "[t]he utility of the product, including the performance, safety, and other advantages associated with that design or formulation." N.C. Gen. Stat. § 99B-6(b)(1), (5). Properly tailored evidence may therefore be relevant if it is sufficiently connected to the seat or seatback design, the relevant rear-impact crash mode, the alleged failure mechanism, the risks and benefits of the challenged design, or the asserted reasonable alternative design.

The same principle applies to statistical evidence. If Kia offers statistics merely to show that the Forte is safe overall, or that the seat must be reasonably designed because the vehicle has a favorable aggregate crash record, the evidence risks misleading the jury and inviting a decision based on generalized safety impressions. But if Kia offers statistical evidence concerning the safety performance of the subject seat design, substantially similar Kia Forte seat designs, or substantially similar rear-impact crash circumstances, the evidence may be relevant to risk-utility, alternative design, notice, foreseeability, causation, or magnitude of risk. In that circumstance, Kia must establish a proper foundation showing that the data is

14

sufficiently tied to the design and crash circumstances at issue and that its probative value is not substantially outweighed by the risks identified in Rule 403.

This ruling is consistent with the distinction reflected in the parties' briefing. Kia relies on cases admitting statistical or dissimilar-accident evidence offered to show a product system's overall effectiveness rather than to reenact the accident. Plaintiff responds that any such principle applies only where the evidence actually concerns the system at issue, not where aggregate vehicle statistics combine unrelated systems and crash types. (DE 106 at 8–11.) The Court need not resolve that dispute categorically now. The admissibility of any such evidence depends on the specific data, the population studied, the crash modes included, the design features measured, the purpose for which the evidence is offered, and the risk of confusion or unfair prejudice.

Accordingly, Plaintiff's MIL Nos. 4 and 8 are **GRANTED IN PART, DENIED WITHOUT PREJUDICE IN PART, and RESERVED IN PART**. Kia may not use generalized safety ratings, awards, overall vehicle safety evidence, or broad crash statistics to argue that the Subject Vehicle was generally safe and therefore the seat or seatback was not defective. The motions are denied without prejudice to the extent Kia seeks to offer properly tailored evidence connected to the seat or seatback design, substantially similar seat designs, a relevant rear-impact crash mode, the risk-utility factors under N.C. Gen. Stat. § 99B-6(b), the reasonable-alternative-design requirement, or another proper evidentiary purpose. Before presenting such evidence, Kia shall raise the matter outside the jury's presence and identify the

specific evidence, the population or data set at issue, the design feature or crash mode measured, the purpose for which the evidence is offered, the foundation supporting its admission, and any proposed limiting instruction.[3]

### 5.     Plaintiff's Motion in Limine No. 9 — Argument That No Seat Could Perform as Plaintiff Contends

Plaintiff seeks to exclude evidence or argument suggesting that no vehicle seat could perform in the manner Plaintiff contends the Subject Vehicle's seat should have performed during the crash. (DE 102 at 10–12.) Plaintiff characterizes this as an improper "negative-evidence" argument that would invite the jury to infer that the Subject Vehicle's seat was not defective from the asserted absence of any seat capable of performing differently. (*Id.*)

Kia responds that it does not intend to argue that a seat could not be made stronger. (DE 105 at 6.) Instead, Kia presses that it intends to present evidence that a stronger seat would not have been a reasonable, safer alternative design. Kia identifies two categories of anticipated evidence: first, evidence concerning the alleged increased risk of severe injury associated with stronger seats in more common, lower-speed rear-impact crashes; and second, evidence that a stronger seat

---

[3]     Where Kia seeks to rely on accident or incident data as evidence of defect, non-defect, causation, or absence of similar failures, the Court will consider the substantial-similarity principles applicable to other-incident evidence. *See Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552–53 (E.D.N.C. 1995) (explaining that evidence of other accidents is highly prejudicial and requires a factual foundation showing substantial similarity; identifying relevant factors as similarity of the products, similarity of the alleged defect, causation related to the defect in the other incidents, and exclusion of reasonable secondary explanations). The required foundation may vary depending on the purpose for which the evidence is offered.

would not have prevented or reduced Mr. Foster's injuries under the crash dynamics and occupant kinematics Kia contends occurred here. (DE 105 at 6–7.)

The Court agrees that Kia may not make an unsupported categorical argument that no seat could perform as Plaintiff contends or that no safer seat design is possible. Such a broad assertion would risk confusing the jury and would not fairly frame the issues under North Carolina's negligent-design statute.

However, Kia is not precluded from presenting otherwise admissible, properly disclosed evidence concerning whether Plaintiff's proposed alternative design was safer, practical, feasible, reasonable, and capable of preventing or substantially reducing the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product. *See* N.C. Gen. Stat. § 99B-6(a)(1). Nor is Kia precluded from offering otherwise admissible evidence bearing on the nature and magnitude of risks associated with the challenged design, the utility of the design, the performance and safety advantages or disadvantages of the design, or causation. *See id.* § 99B-6(b)(1), (5). Those issues are central to the remaining negligent-design claim.

Accordingly, Plaintiff's MIL No. 9 is **GRANTED IN PART and DENIED IN PART**. Kia may not argue or present evidence for the categorical proposition that no seat could perform as Plaintiff contends or that no safer seat design is possible. Kia may present properly disclosed and otherwise admissible evidence concerning the reasonableness, feasibility, comparative risk profile, and alleged injury-prevention effect of Plaintiff's proposed alternative design, including evidence concerning

17

whether a stronger seat would have prevented or substantially reduced the risk of Mr. Foster's injuries under the facts of this crash.

**6.    Plaintiff's Motion in Limine No. 10 — Vehicles Owned or Driven by Witnesses**

Plaintiff seeks to exclude testimony or questioning concerning vehicles witnesses currently own or drive, or have owned or driven in the past, including whether a witness drives or has driven a Kia vehicle or any particular make or model. (DE 102 at 12–13.) Kia responds that such evidence may bear on witness credibility because witnesses may offer testimony concerning whether the Subject Vehicle or its seat system was safely and reasonably designed, and a witness's personal vehicle choices may be consistent or inconsistent with that testimony. (DE 105 at 7–8.)

Bias and credibility are proper subjects of impeachment. *See* Fed. R. Evid. 607; *United States v. Abel*, 469 U.S. 45, 51–52 (1984). A witness's relationship to a party, product, or subject matter may, in appropriate circumstances, bear on the jury's assessment of credibility. The Court, therefore, declines to impose a categorical pretrial exclusion of all testimony or questioning concerning vehicle ownership or use. In limited circumstances, such evidence may bear on credibility, bias, personal knowledge, or the basis for a witness's testimony.

At the same time, the relevance of personal vehicle ownership or use is limited and context dependent. The Court will not permit questioning that invites lay witnesses to offer unsupported opinions about the safety of Kia vehicles, that presents personal vehicle use as substantive proof that the Subject Vehicle's seat or seatback was reasonably designed, or that devolves into irrelevant anecdotes concerning

18

vehicles or driving experiences unrelated to the issues the jury must decide. Any such questioning remains subject to Rules 401, 403, 602, 701, and 611.

Accordingly, Plaintiff's MIL No. 10 is **DENIED WITHOUT PREJUDICE**. Counsel may inquire into vehicle ownership or use only to the extent the questioning is relevant to bias, credibility, personal knowledge, the basis for a witness's testimony, or another permissible purpose. The Court will address objections to specific questions in context at trial.

### 7.    Plaintiff's Motion in Limine No. 11 — Personal Vouching for the Safety of Kia Vehicles

Plaintiff seeks to exclude testimony or argument by Kia's counsel, witnesses, or experts personally vouching for the safety of Kia vehicles. (DE 102 at 13–15.) Kia stipulates that its counsel will not make statements about counsel's personal experience with Kia vehicles or otherwise personally vouch for their safety. Kia argues, however, that witness testimony concerning personal vehicle ownership or use may be relevant to credibility for the same reasons addressed in Plaintiff's MIL No. 10. (DE 105 at 8.)

The Court agrees that counsel may not personally vouch for the safety of Kia vehicles or place counsel's personal beliefs, experiences, or assurances before the jury. Lawyers are advocates, not witnesses, and counsel's personal views concerning product safety have no evidentiary value.

The Court also agrees that expert witnesses may not base opinions concerning the safety, reasonableness, or performance of the Subject Vehicle's seat or seatback on personal preference, anecdotal experience, or personal use of Kia vehicles. Expert

testimony must satisfy Rules 702 and 703 and must be based on sufficient facts or data and reliable principles and methods. Personal assurances of safety, standing alone, are not a substitute for admissible expert opinion testimony. *See Mincey v. S.E. Farm Equip. Co.*, Nos. 4:24-cv-05121-JD & 4:23-cv-01050-JD, 2025 WL 2450913, at *6–7 (D.S.C. Aug. 25, 2025).

This ruling does not categorically bar limited questioning concerning personal vehicle ownership or use where relevant to witness credibility, bias, personal knowledge, or the basis for testimony, as addressed in Plaintiff's MIL No. 10. But such testimony may not be used as substantive proof that the Subject Vehicle's seat or seatback was reasonably designed, nor may it be used as a vehicle for unsupported lay opinions concerning product safety.

Accordingly, Plaintiff's MIL No. 11 is **GRANTED IN PART and DENIED IN PART**. Kia's counsel may not personally vouch for the safety of Kia vehicles. Experts may not offer safety opinions based on personal use, anecdotal experience, or personal preference. Limited questioning concerning vehicle ownership or use may be permitted for credibility, bias, personal knowledge, or another proper purpose, subject to the Federal Rules of Evidence.

### 8.    Plaintiff's Motion in Limine No. 12 — References to the "Men and Women of Kia"

Plaintiff seeks to exclude references to the "men and women of Kia" or suggestions that Plaintiff's claims are directed against the "hardworking men and women of Kia." (DE 102 at 15–16.) Kia responds that such references may be appropriate to remind the jury that Kia's design, development, and testing work was

performed by individuals rather than an abstract entity, and to respond to any argument that Kia "doesn't care about safety," is interested only in profits, or is a faceless corporate actor. (DE 105 at 8–9.)

The Court will not permit either side to convert this trial into an appeal to sympathy, corporate loyalty, or generalized moral judgment. The jury's task is to decide the remaining negligent-design and loss-of-consortium claims based on the evidence and the law. Kia may identify corporate witnesses, describe their roles, and present evidence concerning work performed by Kia employees if relevant to a disputed issue. Kia may also respond to arguments properly made from the evidence.

Kia may not, however, ask the jury to decide the case to protect, vindicate, or avoid harming the "men and women of Kia," nor may it imply that a verdict against Kia is a verdict against nonparty employees. Such argument would risk shifting the jury's focus from the conduct and design decisions at issue to sympathy for persons who are not parties. *See* Fed. R. Evid. 401, 403; 22B *Charles Alan Wright & Arthur R. Miller's Federal Practice and Procedure* § 5214 (2d ed. 2026) (discussing Rule 403's role in excluding evidence where emotional or distracting force substantially outweighs legitimate probative value).

The limitation is reciprocal. Plaintiff may argue, based on admitted evidence, that Kia's design decisions were unreasonable under North Carolina law. Plaintiff may not rely on unsupported rhetoric that Kia or its employees "do not care" about safety, are merely profit-driven, or otherwise invite the jury to decide the case based on generalized corporate condemnation rather than the evidence.

Accordingly, Plaintiff's MIL No. 12 is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**. Kia may identify employees and corporate witnesses and discuss evidence concerning their roles where relevant, but it may not use "men and women of Kia" rhetoric as an appeal to sympathy or as a suggestion that the jury's verdict will punish nonparty employees. Plaintiff likewise may not use unsupported corporate-condemnation rhetoric. The Court will address objections to specific argument in context.

### 9.     Plaintiff's Motion in Limine No. 17 — Medical Conditions Unrelated to Mr. Foster's Spinal Injury

Plaintiff seeks to exclude evidence, testimony, or argument concerning Mr. Foster's medical history, conditions, treatments, or records unrelated to the spinal injury he sustained in the crash. (DE 102 at 18–20.) Kia responds that such evidence may be relevant to causation, damages, life expectancy, preexisting conditions, and the scope of recoverable damages, including pain and suffering, lifestyle effects, and loss-of-consortium issues. (DE 105 at 10–11.) Plaintiff acknowledges that some preexisting or post-incident medical conditions may be relevant under North Carolina law but seeks to prevent Kia from introducing unrelated medical history not tied to an issue the jury must decide. (DE 106 at 16–17.)

The Court declines to exclude all such evidence categorically. Evidence concerning Mr. Foster's medical history may be relevant to causation, damages, life expectancy, preexisting conditions, aggravation, and the extent to which claimed losses are attributable to the accident. Under North Carolina law, when a wrongful act aggravates or activates a preexisting condition, the defendant is liable only to the

extent the wrongful act proximately caused, aggravated, or activated the condition, and not for damages attributable solely to the original condition. *See Potts v. Howser*, 161 S.E.2d 737, 742 (N.C. 1968). North Carolina law also recognizes that compensatory damages may include pain and suffering, inconvenience, loss of enjoyment, and adverse effects on the injured person's lifestyle. *See Iadanza v. Harper*, 611 S.E.2d 217, 221 (N.C. Ct. App. 2005).

At the same time, medical-history evidence must be tied to an issue the jury must decide. Kia may not use unrelated medical conditions for character attacks, sympathy reduction, speculation, or collateral exploration. Nor may Kia argue a medical-causation theory that requires expert support unless a proper expert foundation has been established. Evidence of medical conditions that are remote, unrelated, cumulative, or offered only to suggest that Mr. Foster was generally unhealthy remains subject to Rules 401, 403, 602, 701, 702, and 703.

Accordingly, Plaintiff's MIL No. 17 is **DENIED IN PART and RESERVED IN PART**. Kia may use Mr. Foster's medical history to the extent it is relevant to causation, damages, life expectancy, preexisting conditions, aggravation, loss of consortium, or another proper issue. Before presenting evidence concerning medical conditions that are not facially connected to the spinal injury, causation, life expectancy, or damages claimed in this case, Kia shall raise the matter outside the jury's presence so the Court may determine admissibility in context.

23

### B.    Defendants' Motions in Limine

#### 1.    Kia's Withdrawn Motion in Limine No. 11

Kia's Omnibus Motion in Limine originally sought advance rulings on thirteen categories of evidence and argument. (DE 103.) In its reply, Kia withdrew MIL No. 11, which sought to exclude repetitive evidence and witness testimony. (DE 107.)

Accordingly, Kia's MIL No. 11 is **DENIED AS MOOT**, and the Court does not address it further.

#### 2.    Kia's Motion in Limine No. 1 — Other Product-Liability Lawsuits and Media Coverage

Kia seeks to exclude references to other product-liability lawsuits and media coverage concerning those lawsuits. (DE 103 at 2–3.) Kia clarifies in reply that this motion is not directed at specific other incidents that satisfy the substantial-similarity standard. Rather, Kia seeks to exclude broad statements or evidence suggesting that "everyone," the "whole industry," or lawsuits generally show that seats are too weak, that lawsuits like this are common, or that this is a recurring problem. (DE 107 at 1–2.) Plaintiff responds that other-incident evidence is fact specific, may be admissible upon a proper foundation, and may be offered for defect, causation, notice, knowledge, or other permissible purposes. (DE 104 at 1–3.)

The Court agrees with Kia that Plaintiff may not refer generally to other lawsuits, media coverage, or industry-wide litigation themes to suggest that Kia is liable because lawsuits of this kind exist, because other manufacturers have been sued, or because product-liability litigation generally reflects a known industry problem. Such evidence and argument would risk unfair prejudice, confusion,

hearsay concerns, and trial of collateral matters. Newspaper or media reports offered for the truth of their contents are hearsay absent an applicable exception. *See* Fed. R. Evid. 801–805.

At the same time, Kia's clarification narrows the dispute. This ruling does not decide the admissibility of particular other incidents, prior claims, or lawsuit-related materials offered for a specific permissible purpose, including notice, knowledge, defect, causation, impeachment, punitive damages, or another purpose recognized by the Federal Rules of Evidence and North Carolina substantive law. Those issues are addressed more specifically in connection with Kia's MIL No. 12 and MIL No. 13.

Accordingly, Kia's MIL No. 1 is **GRANTED IN PART and RESERVED IN PART**. Plaintiff may not refer generally to other lawsuits, media coverage, or litigation themes as proof that Kia or the automotive industry knew seats were too weak, that similar lawsuits are common, or that this case is part of a recurring litigation problem. The Court reserves ruling on specific other-incident or lawsuit-related evidence offered for a proper purpose and supported by an adequate foundation.

### 3. Kia's Motion in Limine No. 2 — References to Defense Counsel, Experts, and Arguments Made in Other Cases

Kia seeks to exclude references to the number, size, location, or resources of Kia's law firms; references suggesting that Kia's counsel regularly represent Kia, automotive manufacturers, corporations, or insurers; references to the number of attorneys or firms appearing for Kia; references to arguments made by Kia's counsel in other cases; and similar themes suggesting that Kia is a "big, bad, wealthy

corporation" or that Plaintiff stands as "David" against Kia as "Goliath." (DE 103 at 3–4.) Plaintiff states that she does not intend to invoke "David and Goliath" rhetoric or to draw argumentative inferences from the number of Kia's lawyers or the size of their law firms. Plaintiff argues, however, that the motion should not preclude voir dire, routine identification of counsel, proper expert-bias impeachment, use of admissible prior testimony or party admissions, or evidence of resources or net worth if such evidence becomes relevant to a substantive issue or punitive damages. (DE 104 at 3–6.) Kia clarifies in reply that it seeks to exclude references to the number of attorneys representing Kia, the size or number of their firms, assertions that Kia "always" makes certain arguments in cases "like this," assertions that Kia retains "hired guns" in the form of expensive lawyers or experts, and arguments that Plaintiff has been forced into an unfair contest with a "big company." (DE 107 at 2–3.)

The Court will not permit either party to invite the jury to decide this case based on relative litigation resources, law-firm size, corporate wealth, or generalized litigation themes. Such matters generally have little or no tendency to prove whether the Subject Vehicle's seat or seatback was negligently designed, whether any alleged design defect caused Mr. Foster's injuries, or the amount of compensatory damages recoverable in this case. *See* Fed. R. Evid. 401, 402. Any marginal probative value would be substantially outweighed by the risk of unfair prejudice, confusion of the issues, and collateral disputes. *See* Fed. R. Evid. 403.

Counsel's arguments in other cases are not evidence in this case. *See Mosser v. Fruehauf Corp.*, 940 F.2d 77, 82 (4th Cir. 1991) (recognizing the familiar principle

26

that arguments of counsel are not evidence). References to defense counsel's other representations, the number of lawyers appearing for Kia, the size or location of counsel's firms, or generalized claims that Kia regularly defends similar lawsuits would risk diverting the jury from the evidence admitted in this case.

This ruling does not preclude proper voir dire, routine identification of counsel, impeachment of experts within the limits addressed in Kia's MIL No. 9, or the use of admissible prior testimony, admissions, or other evidence offered for a distinct and proper purpose. *See* Fed. R. Evid. 607; *Abel*, 469 U.S. at 52 (recognizing that proof of bias is generally relevant to credibility). Nor does this ruling decide whether evidence concerning Kia's financial condition may become admissible if punitive damages are submitted to the jury under North Carolina law and the evidence is otherwise properly presented. *See* N.C. Gen. Stat. § 1D-35(2)(d).

Accordingly, Kia's MIL No. 2 is **GRANTED IN PART and DENIED IN PART**. Plaintiff may not use "David and Goliath" rhetoric; refer to the number, size, location, or resources of Kia's law firms as a basis for liability, sympathy, or prejudice; characterize Kia's lawyers or experts as "hired guns"; argue that Kia "always" makes certain arguments in cases like this; or suggest that the case should be decided based on an unfair contest between Plaintiff and a "big company." The motion is denied to the extent it seeks to preclude proper voir dire, routine identification of counsel, expert-bias impeachment, admissible prior testimony or admissions, or evidence offered for another distinct and permissible purpose.

4.    **Kia's Motions in Limine Nos. 3, 4, and 7 — Consumer Safety, Ethical or Moral Obligations, and Use of "Victim"**

Kia's MIL No. 3 seeks to exclude statements suggesting that the purpose of this lawsuit is to establish, enforce, or enhance "consumer safety." (DE 103 at 4–5.) Kia's MIL No. 4 seeks to exclude references to ethical or moral obligations. (*Id*. at 5.) Kia's MIL No. 7 seeks to exclude references to Plaintiff, family members, or loved ones as "victims." (*Id*. at 7.) Plaintiff opposes broad restrictions on evidence and argument concerning safety, design risk, utility, alternative design, reasonableness, and punitive damages, but agrees not to refer to herself, family members, or loved ones as "victims." (DE 104 at 6–10, 15.)

The parties' briefing narrows the dispute. Kia clarifies that it does not seek to prevent Plaintiff from offering admissible evidence that the Subject Vehicle or seat design was not reasonably designed under North Carolina law. Rather, Kia seeks to prevent argument that the jury's role is to "ensure consumer safety," "protect the public," or apply a generalized safety, ethical, or moral standard untethered to the law governing the remaining claims. (DE 107 at 3–5.) Plaintiff similarly represents that she will not ask the jury for injunctive relief, will not ask the jury to formulate or enforce vehicle-safety standards, and will not ask the jury to act as a regulator. (DE 104 at 8.)

The Court will not permit counsel to ask the jury to decide this case as a regulator, to protect the public generally, to enforce a generalized consumer-safety mission, or to impose ethical or moral standards untethered to the governing law. The jury's task is to decide Plaintiff's remaining negligent-design and loss-of-

28

consortium claims based on the admitted evidence and the Court's instructions. *See* Fed. R. Evid. 401, 403, 611.

This ruling does not prevent Plaintiff from presenting admissible evidence concerning product safety, risk, utility, alternative design, foreseeability, consumer use, Kia's design choices, or the reasonableness of the challenged design where such evidence is relevant under N.C. Gen. Stat. § 99B-6 and the Federal Rules of Evidence. Nor does it prevent counsel from arguing, based on admitted evidence, that Kia acted unreasonably under North Carolina law. The line is between evidence and argument tied to the legal issues the jury must decide and appeals asking the jury to decide the case based on an abstract public-safety mission or a moral duty beyond the governing legal standard.

The Court also agrees that the term "victim" should not be used to characterize Plaintiff, Mr. Foster, family members, or loved ones in this civil products-liability action. The term carries unnecessary argumentative force and may imply a criminal or quasi-criminal characterization not at issue here. Counsel and witnesses shall use neutral terms such as "Plaintiff," "Mr. Foster," "Mrs. Foster," "injured party," or the person's name.

Accordingly, Kia's MIL Nos. 3, 4, and 7 are **GRANTED IN PART and DENIED IN PART**. Plaintiff may not ask the jury to act as a regulator, protect the public generally, enforce a generalized consumer-safety mission, or apply ethical or moral standards beyond the law. Plaintiff may present admissible evidence and argument concerning safety, risk, utility, alternative design, foreseeability, consumer

29

use, design choices, and reasonableness under North Carolina law. Plaintiff, counsel, and witnesses shall not refer to Plaintiff, Mr. Foster, family members, or loved ones as "victims."

### 5.    Kia's Motion in Limine No. 5 — Persons in the Courtroom and Kia's Corporate Representative

Kia seeks to exclude references to persons present in or absent from the courtroom, including persons assisting counsel, observers, Kia representatives, and Kia's corporate representative. (DE 103 at 5–6.) Plaintiff states that she does not intend to comment on spectators, trial observers, members of the gallery, family members, members of the press, or persons unaffiliated with the parties. Plaintiff argues, however, that she should be permitted to comment, in appropriate circumstances, on Kia's choice of corporate representative, the testimony or absence of Kia corporate witnesses, and the testimony or absence of disclosed experts. (DE 104 at 10–13.) Kia clarifies in reply that it does not seek to prevent Plaintiff from arguing that Kia's evidence fails to respond adequately to Plaintiff's allegations. Instead, Kia seeks to prevent statements, arguments, or suggestions that Kia "does not care" about Plaintiff or this case because particular representatives or individuals are not present in the courtroom. (DE 107 at 5.)

The Court agrees that Plaintiff may not ask the jury to infer liability, indifference, conscious disregard, or lack of care from courtroom attendance or absence standing alone. The presence or absence of spectators, persons assisting counsel, non-witness representatives, or other individuals in the courtroom is not evidence of whether the Subject Vehicle's seat or seatback was negligently designed,

whether any alleged design defect caused Mr. Foster's injuries, or the amount of damages. Such argument would risk inviting speculation and unfair prejudice. *See* Fed. R. Evid. 401, 403, 611.

The Court declines, however, to impose a categorical pretrial bar on all comment concerning witnesses whom Kia chooses to call or not call. Kia's clarification confirms that Plaintiff may argue, based on the evidence admitted at trial, that Kia's witnesses or evidence do not adequately respond to Plaintiff's allegations. Whether Plaintiff may go further and comment on Kia's failure to call a particular corporate witness, disclosed expert, or other witness depends on context, including the witness's identity, relationship to Kia, availability, disclosure status, expected testimony, whether the testimony would be cumulative, whether the witness is peculiarly within Kia's control, and whether any requested inference is supported by law and the trial record.

Accordingly, Kia's MIL No. 5 is **GRANTED IN PART and RESERVED IN PART**. Plaintiff may not argue that Kia does not care about Plaintiff, Mr. Foster, or this case based on the presence or absence of particular courtroom representatives, spectators, persons assisting counsel, or non-witness individuals. Plaintiff may argue, based on admitted evidence, that Kia's proof fails to respond to Plaintiff's allegations. The Court reserves ruling on any specific request to comment on Kia's failure to call a particular corporate witness, disclosed expert, or other witness. Counsel shall raise any such proposed argument outside the jury's presence before making it.

31

**6.      Kia's Motion in Limine No. 6 — Kia's State of Mind or Knowledge**

Kia seeks to exclude testimony or argument purporting to interpret Kia documents as evidence of Kia's state of mind or knowledge, particularly where the meaning of the documents can be understood by the jury or where witnesses would speculate about what Kia was thinking. (DE 103 at 6–7.) Plaintiff responds that Kia's knowledge and engineering judgment are relevant to negligent design and punitive damages, and that qualified experts may explain technical documents, design decisions, testing, and engineering judgments within their expertise. (DE 104 at 13–15.) Kia clarifies that it does not seek to exclude evidence or argument that the contents of documents bear on design reasonableness but instead seeks to exclude unsupported testimony or argument about what Kia was thinking beyond what the evidence supports. (DE 107 at 5.)

The Court agrees that witnesses may not speculate about Kia's corporate state of mind, motive, intent, or subjective beliefs. A witness may testify only from personal knowledge or, if offering opinion testimony, within the limits imposed by the Federal Rules of Evidence. *See* Fed. R. Evid. 602, 701, 702, 703. Experts may not act as document narrators, hearsay conduits, or mind readers, and may not offer opinions about what Kia "thought," "intended," or "believed" unless such opinions are grounded in admissible evidence, reliable methodology, and the expert's disclosed opinions. *See Mincey*, Nos. 4:24-cv-05121-JD & 4:23-cv-01050-JD, 2025 WL 2450913, at \*6–7 (excluding expert opinions concerning what a party knew or should have done

where the opinions were not grounded in specialized methodology and concerned matters the jury could evaluate).

At the same time, Kia's knowledge, notice, testing, engineering standards, internal documents, and design choices may be relevant to whether Kia acted unreasonably under N.C. Gen. Stat. § 99B-6 and, if reached, to punitive damages. Qualified experts may explain technical documents, engineering standards, testing, design choices, and engineering implications where such testimony satisfies Rule 702 and assists the jury. The line is between proper technical explanation and unsupported speculation about corporate intent.

Accordingly, Kia's MIL No. 6 is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**. Plaintiff may not elicit speculative testimony or make unsupported argument concerning Kia's corporate state of mind, motive, or intent. The motion is denied without prejudice to the extent it seeks to exclude properly supported evidence or expert testimony concerning Kia's knowledge, notice, testing, engineering standards, design decisions, or technical documents.

### 7.    Kia's Motion in Limine No. 8 — Discovery Requests, Discovery Disputes, and the Discovery Process

Kia seeks to exclude references to discovery requests, discovery disputes, discovery objections, privilege assertions, and discovery proceedings in this case or other cases. (DE 103 at 7–8.) Plaintiff agrees she will not read Kia's discovery objections to the jury or present motions to compel, discovery rulings, or the procedural mechanics of discovery, but argues she should be permitted to present evidence that certain materials, including DFMEA materials or Forte testing data,

were not produced or do not exist. (DE 104 at 15–16.) Kia replies that Plaintiff has not filed a spoliation or adverse-inference motion and that ongoing DFMEA issues are being addressed separately. (DE 107 at 6.)

The Court agrees that discovery disputes, objections, privilege assertions, motions practice, and discovery rulings are generally matters for the Court, not the jury. Discovery serves important pretrial functions, including narrowing issues, ascertaining facts, and preparing the case for trial; however, the right to obtain discovery and the right to use discovery materials as evidence at trial are distinct. *See* 8 *Charles Alan Wright & Arthur R. Miller's Federal Practice and Procedure* § 2001 (3d ed. 2026) (explaining that discovery rules permit broad pretrial inquiry, while restrictions on trial use preserve traditional evidentiary limits). Counsel may not read discovery objections or rulings to the jury, characterize discovery disputes as evidence of liability, or invite the jury to punish a party for positions taken during discovery. Such matters ordinarily have little probative value as to the issues the jury must decide and risk unfair prejudice, confusion, delay, and collateral disputes. *See* Fed. R. Evid. 401, 403, 611.

The Court reserves ruling, however, on whether Plaintiff may present evidence or argument concerning the absence, nonexistence, or nonproduction of specific technical materials if such evidence is relevant to a disputed issue and supported by an appropriate foundation. Evidence that a particular engineering analysis, test, document, or category of technical data does not exist, was not performed, or was not produced may, depending on the foundation and purpose, differ from evidence of a

34

discovery dispute. The Court also reserves any issue concerning spoliation, adverse inference, or the DFMEA dispute unless and until properly presented in the appropriate procedural posture.

Accordingly, Kia's MIL No. 8 is **GRANTED IN PART and RESERVED IN PART**. Plaintiff may not refer to discovery disputes, objections, privilege assertions, motions to compel, discovery rulings, or the procedural mechanics of discovery before the jury. The Court reserves ruling on whether evidence concerning the absence, nonexistence, or nonproduction of specific technical materials may be presented for a proper evidentiary purpose. Counsel shall raise any such issue outside the jury's presence before referring to it before the jury.

### 8. Kia's Motion in Limine No. 9 — Prior Expert Compensation in Other Cases

Kia seeks to exclude questioning of defense experts regarding the nature and amount of monetary fees previously paid by Kia, other automotive manufacturers, or other defendants in unrelated cases involving other accidents and allegations. (DE 103 at 8–9.) Kia does not seek to exclude cross-examination about compensation in this case but argues that prior compensation in unrelated cases has little relevance and risks unfair prejudice, confusion, and collateral mini-trials. (DE 107 at 6–7.) Plaintiff responds that expert bias is a proper subject of cross-examination and that a retained expert's financial relationship with a party, industry, or side of litigation may bear on credibility. (DE 104 at 17–18.)

Bias is a proper subject of impeachment. *See* Fed. R. Evid. 607; *Abel*, 469 U.S. at 52. Retained experts may be cross-examined about compensation in this case, the

nature and frequency of their work for Kia or similar defendants, the general proportion of their work or income derived from litigation-related engagements, and other matters reasonably probative of bias. *See Behler v. Hanlon*, 199 F.R.D. 553, 557–62 (D. Md. 2001) (recognizing that an expert's history of earning significant income from one side of litigation may be relevant to bias impeachment, while limiting overly intrusive financial discovery and observing that percentage-based income information may allow the jury to assess potential bias). This Court has likewise recognized that compensation evidence may be probative of bias, while also requiring reasonable limits to prevent unfair prejudice, inflammatory characterization, or collateral mini-trials. *See United States ex rel. Shepherd v. Fluor Corp., Inc.*, No. 6:13-cv-02428-JD, 2026 WL 105764, at *7–8 (D.S.C. Jan. 6, 2026).

The Court will not, however, permit detailed case-by-case inquiries into exact amounts paid in unrelated matters absent a particularized showing that such inquiry is probative and not substantially outweighed by Rule 403 concerns. Rule 26 requires disclosure of compensation to be paid for the expert's study and testimony in this case, and it requires disclosure of cases in which the expert testified during the preceding four years; it does not, by itself, require disclosure of the expert's compensation in each prior case. *See* Fed. R. Civ. P. 26(a)(2)(B)(v)–(vi). Detailed compensation evidence from unrelated matters may confuse the issues, waste time, invite collateral disputes, and unfairly prejudice the jury. *See Behler*, 199 F.R.D. at 561–62.

Accordingly, Kia's MIL No. 9 is **GRANTED IN PART and DENIED IN PART**. Plaintiff may cross-examine Kia's experts concerning compensation in this case, the nature and frequency of prior work for Kia or similar defendants, the expert's general litigation-related work, and general financial bias. Plaintiff may not elicit detailed dollar amounts paid in unrelated cases or conduct extended case-by-case inquiries into unrelated compensation without first raising the matter outside the jury's presence and making a particularized showing of relevance and admissibility.

### 9.     Kia's Motion in Limine No. 10 — Alleged Influence or Deception of NHTSA

Kia seeks to exclude evidence or argument suggesting that Kia or other automakers attempted to unduly influence or deceive NHTSA, including any "fraud-on-NHTSA" theory. (DE 103 at 9–10.) Plaintiff responds that she is not asserting a fraud-on-NHTSA claim but argues that NHTSA rulemaking materials and manufacturer communications may be relevant to Kia's knowledge, the adequacy of FMVSS 207, and Kia's design choices. (DE 104 at 18–20.) Kia replies that it does not seek to exclude rulemaking submissions or evidence relevant to Kia's understanding of seat-design considerations, but seeks to exclude assertions that Kia misled NHTSA, misrepresented the state of its knowledge, or caused NHTSA to adopt an unreasonable standard. (DE 107 at 7–8.)

The Court agrees that Plaintiff may not assert a fraud-on-NHTSA theory, argue that Kia deceived or defrauded NHTSA, or invite the jury to impose liability based on alleged misconduct in federal rulemaking. In *Buckman Co. v. Plaintiffs'*

37

*Legal Committee*, the Supreme Court held that state-law fraud-on-the-FDA claims were impliedly preempted because policing fraud against a federal agency is an inherently federal matter and because such claims would interfere with the agency's responsibility to police fraud consistently with its own regulatory judgment and objectives. 531 U.S. 341, 347–53 (2001). Although *Buckman* involved the FDA and medical devices, its reasoning supports excluding any effort to convert this negligent-design trial into a collateral inquiry about whether Kia deceived or improperly influenced a federal regulator.

This ruling does not categorically exclude NHTSA materials, public rulemaking materials, or communications with NHTSA if offered for a proper purpose, such as notice, knowledge, regulatory context, or design reasonableness, and if otherwise admissible under the Federal Rules of Evidence. *Buckman* distinguished fraud-on-the-agency claims from traditional state tort claims and does not require exclusion of all regulatory communications merely because they involve a federal agency. Those issues overlap with the Court's rulings on Plaintiff's MIL Nos. 2, 3, and 5.

Accordingly, Kia's MIL No. 10 is **GRANTED IN PART and RESERVED IN PART**. Plaintiff may not argue that Kia deceived, defrauded, or improperly influenced NHTSA, or that Kia is liable because of alleged misconduct in federal rulemaking. The Court reserves ruling on specific NHTSA-related materials offered for a permissible purpose. Before presenting such materials, the proponent shall raise the matter outside the jury's presence and identify the specific evidence, the purpose

38

for which it is offered, the non-hearsay or hearsay basis for admission, and any proposed limiting instruction.

### 10.    Kia's Motion in Limine No. 12 — Other Similar Incidents

Kia seeks to exclude evidence of other incidents involving alleged rear-impact failures of Kia or Hyundai front seats. (DE 103 at 10–11.) Plaintiff responds that other-incident evidence may be admissible upon a proper foundation and that the substantial-similarity inquiry depends on the purpose for which the evidence is offered. (DE 104 at 21–25.) Kia replies that Plaintiff's expert, Steven Meyer, did not disclose in his Rule 26 report the opinions, facts, or analysis necessary to establish substantial similarity, and argues that any late attempt to supply that foundation should be excluded under Rules 26 and 37. (DE 107 at 8–12.) After the initial briefing, Plaintiff filed DE 120, a supplemental memorandum contending that other incidents involving Kia/Hyundai seats built to ES8800 and ES8600 and collapsing rearward in rear-impact crashes are admissible to prove notice, defect, risk-utility, punitive damages, and Kia's knowledge. (DE 120.)

The Court construes DE 120 as a supplemental submission and proffer directed to Kia's MIL No. 12 and related issues. The filing does not, by itself, establish admissibility, cure any disclosure deficiency, or convert the issue into a separate motion requiring a definitive ruling admitting the evidence before trial. To the extent DE 120 requests an affirmative pretrial ruling admitting other-incident evidence, the Court declines to grant that request at this stage. Plaintiff remains responsible for

establishing the required foundation and satisfying any applicable disclosure requirements before referring to any other incident before the jury.

Evidence of other incidents may be admissible for a proper purpose, but it carries a substantial risk of unfair prejudice and requires careful trial management. When other incidents are offered to prove defect or causation, the proponent must establish a substantial-similarity foundation, including similarity of products, similarity of the alleged defect, defect-related causation in the other incidents, and exclusion of reasonable secondary explanations. *See Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552–53 (E.D.N.C. 1995). When other incidents are offered only for notice, knowledge, or awareness, the similarity requirement may be less demanding, but the proponent must still show that the incident was sufficiently related to the alleged hazard to make the evidence relevant and not unduly prejudicial. *See Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1385–86 (4th Cir. 1995).

The Court's summary-judgment order also informs the trial-management posture. At summary judgment, the Court concluded that Plaintiff's other-incident summary table did not show that the listed incidents involved comparable seat structures, testing standards, or failure modes. (DE 92 at 16.) That ruling does not require categorical exclusion of all other-incident evidence at trial, but it confirms that Plaintiff must do more than identify other Kia or Hyundai rear-impact seat-collapse claims in general terms. Plaintiff must establish an incident-specific foundation sufficient for the purpose for which the evidence is offered.

The Court must also address Kia's Rule 26 and Rule 37 arguments. If Plaintiff intends to establish substantial similarity through expert testimony, Plaintiff must show that the opinions, facts, and bases supporting that testimony were properly disclosed, or that any nondisclosure was substantially justified or harmless. *See* Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–98 (4th Cir. 2003). The Court will not permit a party to use a motion-in-limine proffer, a supplemental brief, or a live foundational hearing as a substitute for timely expert disclosure when the Federal Rules require exclusion.

Accordingly, Kia's MIL No. 12 is **DENIED IN PART and RESERVED IN PART**. The motion is denied to the extent Kia seeks categorical pretrial exclusion of all other-incident evidence. The Court reserves ruling on the admissibility of any specific other incident, any expert testimony concerning such incidents, and any Rule 26/37 objection.

Before Plaintiff refers to any other incident in opening statement, witness examination, exhibit publication, or argument, Plaintiff shall raise the matter outside the jury's presence and identify: the specific incident; the vehicle, model year, seat design, and applicable seat standards; the alleged defect or failure mode; the crash type, severity, impact direction, occupant position, and injury mechanism; the evidence connecting the alleged defect to the injury; any reasonable secondary explanations and how they are excluded; the purpose for which the evidence is offered; whether the incident is offered for defect, causation, notice, punitive damages, impeachment, or another purpose; the hearsay or non-hearsay basis for the

41

evidence; the expert testimony supporting admission and where it was disclosed; and any requested limiting instruction.

### 11.    Kia's Motion in Limine No. 13 — Evidence or Argument that Kia "Knew" the Subject Seat Was Defective

Kia seeks to exclude evidence, testimony, argument, or statements that Kia "knew" the subject seat was defective. (DE 103 at 12–13.) Kia relies in part on the Court's summary-judgment order (DE 92), which found the summary-judgment record insufficient to establish Kia's knowledge of a defect or hazard in the Subject Vehicle's seatback design for purposes of Plaintiff's dismissed warning-based theory. Plaintiff responds that knowledge remains relevant to negligent design, risk-utility, notice, punitive damages, and Kia's design decisions. (DE 104 at 25–28.) Plaintiff also relies on other-incident evidence and internal engineering standards addressed in DE 120.

The Court will not permit Plaintiff to make a conclusory assertion that Kia "knew the Subject Seat was defective" unless admitted evidence supports that inference. Such argument risks overstating the record, collapsing disputed inferences into a conclusion, and confusing the jury regarding the remaining negligent-design claim. Plaintiff may not use opening statement, witness questioning, or argument to present an unsupported knowledge conclusion as though it has already been established.

At the same time, a categorical exclusion of knowledge, notice, testing, standards, or design-decision evidence would be too broad. The remaining claim arises under N.C. Gen. Stat. § 99B-6, which directs the factfinder to consider, among

42

other things, the nature and magnitude of the risks associated with the design, the likely awareness of product users of those risks, the availability and feasibility of safer alternative designs, and the utility, performance, safety, and advantages associated with the design. *See* N.C. Gen. Stat. § 99B-6(b). Evidence concerning what Kia knew or had reason to know through testing, engineering standards, internal documents, field performance, design analyses, or communications may therefore be relevant to whether Kia acted unreasonably in designing the product and, if reached, to punitive damages.

The Court's summary-judgment ruling does not require a different result. At summary judgment, the Court concluded that the record before it did not establish Kia's knowledge for purposes of a dismissed theory. That ruling does not bar Plaintiff from offering otherwise admissible evidence relevant to knowledge, notice, or design reasonableness for the remaining negligent-design claim. Nor, however, does it relieve Plaintiff of the obligation to establish a proper evidentiary foundation for any knowledge argument at trial.

Accordingly, Kia's MIL No. 13 is **GRANTED IN PART and RESERVED IN PART**. Plaintiff may not assert, without an evidentiary foundation, that Kia knew the Subject Seat was defective. Plaintiff may present specific admissible evidence of Kia's knowledge, notice, testing, standards, communications, design choices, risk assessment, or field experience and may argue reasonable inferences from that evidence. Any knowledge theory based on other incidents, NHTSA materials, media reports, lawsuits, corporate state-of-mind testimony, or expert testimony remains

subject to the Court's rulings above, including the limitations on speculative state-of-mind testimony, fraud-on-NHTSA argument, media or litigation themes, and the foundation and disclosure requirements applicable to other-incident evidence.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Omnibus Motion in Limine (DE 102) and the Kia Defendants' Omnibus Motion in Limine (DE 103) are **GRANTED IN PART, DENIED IN PART, DENIED WITHOUT PREJUDICE IN PART, RESERVED IN PART, and DENIED AS MOOT IN PART** as set forth below.

Plaintiff's Omnibus Motion in Limine is resolved as follows:

1. Plaintiff's MIL Nos. 13, 14, and 18 are **DENIED AS MOOT**.

2. Plaintiff's MIL Nos. 1, 2, 6, 7, 15, and 16, relating to collateral sources, insurance, taxes, and annuities; FMVSS compliance as a complete defense; "too many lawsuits," "litigation crisis," and similar themes; evidence or argument concerning the alleged economic impact of a verdict on vehicle prices; apportionment of fault; and references to the motions in limine, are **GRANTED**, subject to the limitations stated above regarding FMVSS compliance.

3. Plaintiff's MIL Nos. 3 and 5, relating to NHTSA approval, FMVSS compliance, and government standards, are **GRANTED IN PART and RESERVED IN PART**.

4. Plaintiff's MIL Nos. 4 and 8, relating to overall safety evidence, ratings, awards, and statistical data, are **GRANTED IN PART, DENIED WITHOUT PREJUDICE IN PART, and RESERVED IN PART**.

5. Plaintiff's MIL No. 9, relating to argument that no seat could perform as Plaintiff contends, is **GRANTED IN PART and DENIED IN PART**.

6. Plaintiff's MIL No. 10, relating to vehicles owned or driven by witnesses, is **DENIED WITHOUT PREJUDICE**.

7. Plaintiff's MIL No. 11, relating to personal vouching for the safety of Kia vehicles, is **GRANTED IN PART and DENIED IN PART**.

8. Plaintiff's MIL No. 12, relating to references to the "men and women of Kia," is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**.

9. Plaintiff's MIL No. 17, relating to medical conditions unrelated to Mr. Foster's spinal injury, is **DENIED IN PART and RESERVED IN PART**.

The Kia Defendants' Omnibus Motion in Limine is resolved as follows:

1. Kia's MIL No. 11 is **DENIED AS MOOT**.

2. Kia's MIL No. 1, relating to other product-liability lawsuits and media coverage, is **GRANTED IN PART and RESERVED IN PART**.

3. Kia's MIL No. 2, relating to references to defense counsel, experts, and arguments made in other cases, is **GRANTED IN PART and DENIED IN PART**.

4. Kia's MIL Nos. 3, 4, and 7, relating to consumer-safety themes, ethical or moral obligations, and use of the term "victim," are **GRANTED IN PART and DENIED IN PART**.

5. Kia's MIL No. 5, relating to persons in the courtroom and Kia's corporate representative, is **GRANTED IN PART and RESERVED IN PART**.

6. Kia's MIL No. 6, relating to Kia's state of mind or knowledge, is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**.

7. Kia's MIL No. 8, relating to discovery requests, discovery disputes, and the discovery process, is **GRANTED IN PART and RESERVED IN PART**.

8. Kia's MIL No. 9, relating to prior expert compensation in other cases, is **GRANTED IN PART and DENIED IN PART**.

9. Kia's MIL No. 10, relating to alleged influence or deception of NHTSA, is **GRANTED IN PART and RESERVED IN PART**.

10. Kia's MIL No. 12, relating to other similar incidents, is **DENIED IN PART and RESERVED IN PART**.

11. Kia's MIL No. 13, relating to evidence or argument that Kia "knew" the Subject Seat was defective, is **GRANTED IN PART and RESERVED IN PART**.

All rulings reserved in whole or in part reflect the Court's determination that

admissibility depends on trial context, foundation, purpose, and the manner in which

the evidence, testimony, or argument is presented. Counsel shall raise reserved matters outside the jury's presence before referring to them, eliciting testimony concerning them, publishing exhibits concerning them, or arguing them. The Court will address specific objections as they arise under the Federal Rules of Evidence and the Court's inherent authority to manage the proceedings.

      **IT IS SO ORDERED**.

_Joseph Dawson, III_
Joseph Dawson, III
United States District Judge

Florence, South Carolina
July 9, 2026